# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LATOYA LYNETTE WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-1012-JWD-SDJ** |
| **RACETRAC PETROLEUM** | |

---

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

### ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 3, 2021.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**LATOYA LYNETTE**                                              **CIVIL ACTION**
**WILLIAMS**


**VERSUS**                                                     **NO. 18-1012-JWD-SDJ**


**RACETRAC PETROLEUM**

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Before the Court is a Motion for Summary Judgment (R. Doc. 32) filed by Defendant, RaceTrac Petroleum, on March 19, 2020.[1] Plaintiff, Latoya Williams, filed an Opposition (R. Doc. 40) in response to the Motion on August 18, 2020.[2] Consistent with Local Rule 7(f) (allowing automatic replies to Rule 56 motions), Defendant filed a Reply Memorandum on September 1, 2020, to address what it perceived as "procedural and substantive defects" in Plaintiff's Opposition. (R. Doc. 41 at 1). Finally, Plaintiff impermissibly filed a Sur-Reply on September 23, 2020, without leave of Court. *See* LR 7(f) ("Leave of court must be obtained to file surreplies in Rule 12 and Rule 56 motions."). Having considered the record and the applicable law, the Court

---

[1] The district judge referred this Motion for Summary Judgment (R. Doc. 33) for report and recommendation on March 20, 2020. *See* 28 U.S.C. § 636(b)(1)(B) (motions for summary judgment may be referred for report and recommendation); Fed. R. Civ. P. 72(b) (same); LR 72(b) (same).

[2] Plaintiff had until April 9, 2020, to file her response. *See* LR 7(f) (responses to motions due within 21 days). Plaintiff failed to respond, or even request an extension, within the time allowed. But "[g]iven the relief sought by Defendant and the fact that Plaintiff is proceeding pro se," the Court issued an Order on June 26, 2020, giving Plaintiff until July 17, 2020, to respond to Defendant's Motion for Summary Judgment. (R. Doc. 35). On July 11, 2020, Plaintiff filed a Motion for Extension seeking at least another 21 days to respond, citing health reasons. (R. Doc. 38). The Court granted Plaintiff's request, giving her until August 17, 2020—nearly 5 months after the Motion was filed—to respond. (R. Doc. 39).

**RECOMMENDS** that Defendant's Motion for Summary Judgment (R. Doc. 32) be **GRANTED** and that Plaintiff's cause of action be **DISMISSED with prejudice**.

## I.    BACKGROUND

In this cause of action, Plaintiff claims that Defendant violated Title VII of the Civil Rights Act (Title VII), 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12112(a), 12203(a), by terminating her employment on July 6, 2016, because of her race and disability and in retaliation for addressing work-related issues on April 11, 2016, with a RaceTrac manager, Jonas Camacho. (R. Docs. 1, 4).

Plaintiff began working for RaceTrac on February 10, 2009, as a "swing manager." (Pl.'s Depo., R. Doc. 32-3 at 16-18). Eventually, Plaintiff was promoted to Store Manager, managing RaceTrac Store No. 117 beginning in February of 2016. (Pl.'s Depo., R. Doc. 32-3 at 19-20). As the Store Manager, Plaintiff was assigned to work from 5:30 a.m. to 3:00 p.m., Monday through Friday. (Pl.'s Depo., R. Doc. 32-3 at 68, 312). Shortly after becoming the Manager of Store No. 117, between April 11, 2016, and June 29, 2016, Plaintiff was late to work on 19 separate occasions, at times by as much as 3 to 5 hours. (Kutz Decl., R. Doc. 32-4 at 1-2); (Pl.'s Depo., R. Doc. 32-3 at 106, 120-121) (Plaintiff did not dispute her tardiness during her deposition).

Over those 2 months, Plaintiff's direct supervisor, Lenny Kutz, and RaceTrac's Director of Human Resources, Tate Cutrer, consistently counseled Plaintiff about her tardiness and placed her on a Performance Improvement Plan before issuing 2 additional written warnings for Plaintiff's continued tardiness (R. Doc. 32-3 at 311-12, 313-15, 321-23); (Kutz Decl., R. Doc. 32-4 at 1-3); (Cutrer Decl., R. Doc. 32-5 at 2). When her attendance still did not improve, Plaintiff was given a final written warning during a June 29, 2016 meeting with Mr. Kutz and Ann Turner (Recruitment

and Engagement Specialist). (R. Doc. 32-3 at 308-09) (Final Written Warning); (Kutz Decl., R. Doc. 32-4 at 2).

The June 29, 2016 meeting took place in the back storage room inside Store No. 117. (Kutz Decl., R. Doc. 32-4 at 2). The uncontroverted evidence shows that "immediately upon presenting Ms. Williams with the [Final Written Warning], she became defensive and started yelling. Ms. Williams refused to sign the disciplinary document" and "then abruptly left the back storage room – sneering that she was telephoning Mr. Tate Cutrer (Director of Talent and Learning)" about the Final Written Warning. (Kutz Decl., R. Doc. 32-4 at 2-3). When she returned to the storage room, Mr. Kutz was on his cell phone and Plaintiff became "hysterical." (Pl.'s Depo., R. Doc. 32-3 at 97) (Plaintiff described herself as hysterical); (Kutz Decl., R. Doc. 32-4 at 3). According to Mr. Kutz, upon noticing his cell phone, Plaintiff began to scream:

> Are you recording me? That's illegal without my knowledge! I have an attorney! I know lots of attorneys! I know a judge! I can call a f*cking judge!

(Kutz Decl., R. Doc. 32-4 at 3); (Pl.'s Depo., R. Doc. 32-3 at 97-88) (Plaintiff testified that she was "kind of angry"; and so, she "could have" used profanity. "I don't know. I really don't recall . . . ."). Mr. Kutz tried, unsuccessfully, to calm Plaintiff. She then grabbed the Final Written Warning from the desk and abruptly left the store. (Kutz Decl., R. Doc. 32-4 at 3).

Following the meeting, Mr. Kutz informed Tate Cutrer that Ms. Williams had "engaged in highly unprofessional conduct—which included yelling and profanity witnessed and/or heard by other RaceTrac employees and customers." (Cutrer Decl., R. Doc. 32-5 at 2); (Kutz Decl., R. Doc. 32-4 at 3) (Kutz stated that after he left the storage room, he "witnessed customers and other RaceTrac employees' shocked faces" and noted that Plaintiff was in her RaceTrac uniform as she was yelling). Mr. Kutz and Tate Cutrer then conferred with Renzo Bassanini (Director of Field Human Resources) and Jonas Camacho (Operations Supervisor) about Plaintiff's conduct and

behavior during the meeting. (Cutrer Decl., R. Doc. 32-5 at 2); (Kutz Decl., R. Doc. 32-4 at 3); (Bassanini Decl., R. Doc. 32-6 at 2). The decision was then made to terminate Plaintiff's employment based on her highly unprofessional conduct during the June 29, 2016 meeting. The decisionmakers were also cognizant that the meeting was only being held to discuss Plaintiff's habitual tardiness. (Cutrer Decl., R. Doc. 32-5 at 2); (Bassanini Decl., R. Doc. 32-6 at 2).

On July 6, 2016, Tate Cutrer and Jonas Camacho met Plaintiff at a donut shop to discuss her unprofessional behavior. During that meeting, Tate Cutrer informed Plaintiff that "RaceTrac was terminating her employment due to the behavior she exhibited." (Cutrer Decl., R. Doc. 32-5 at 2); (Pl.'s Depo., R. Doc. 32-3 at 212-14). According to both Plaintiff and Tate Cutrer, Plaintiff laughed at this news and promptly left. (Pl.'s Depo., R. Doc. 32-3 at 213); (Cutrer Decl., R. Doc. 32-5 at 3).

Following her termination, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission, alleging she was terminated because of her race and disability. (R. Doc. 1-1 at 19). After receiving notice of her right to sue (R. Doc. 1-1 at 16), Plaintiff filed the instant lawsuit on November 13, 2018, alleging that her termination constituted race and disability discrimination. (R. Doc. 1-1 at 19). She also appears to claim disability-based harassment, although her Complaint is not entirely clear. (R. Doc. 1-1). On November 19, 2018, Plaintiff amended her Complaint to add a claim for retaliation. (R. Doc. 4). At the close of discovery, Defendant moved for summary judgment.

## II.    PARTIES' ARGUMENTS

In its Motion, Defendant suggests summary judgment is appropriate for the following reasons. First, Defendant argues Plaintiff cannot survive summary judgment because she failed to present any evidence along with her Opposition (R. Doc. 40) and did not respond to Defendant's

Statement of Uncontested Facts, as required by Local Rule 56. *See* LR 56(c) (requiring an opposing statement of material facts), LR 56(f) (movant's statement of facts deemed admitted unless properly controverted).[3] Second, Defendant claims Plaintiff abandoned her race discrimination claim under Title VII during her deposition. Plaintiff does not refute this. Third, Plaintiff's retaliation claim must fail because she not only failed to exhaust administrative remedies, Plaintiff never engaged in protected activity. Next, Defendant suggests Plaintiff cannot establish a prima facie case of disability discrimination because her habitual tardiness rendered her unqualified to perform her job. Beyond that, Plaintiff cannot show that Defendant's legitimate nondiscriminatory reason for her termination—i.e., Plaintiff's unprofessional conduct during the June 29, 2016 meeting, along with her habitual tardiness—is pretextual.

In her Opposition, Plaintiff makes little effort to respond to any of the evidence or substantive arguments presented by Defendant; instead, she emphasizes that she was a good employee, going "above and beyond" and taking her "job serious[ly]." (R. Doc. 40 at 5).[4] Beyond that, Plaintiff asks that the Court not rule on Defendant's Motion for Summary Judgment until it has "subpoena[ed] RaceTrac for all evidence to prove [her] case" (R. Doc. 40 at 6), including: "all

---

[3] The Court acknowledges that Plaintiff failed to respond to Defendant's Statement of Uncontested Material Facts and that Defendant correctly relays the requirements of Local Rule 56(c), as well as its consequences, *see* LR 56(f). The Court also agrees that Plaintiff has failed to put forth any evidence in response to Defendant's Motion for Summary Judgment. Nonetheless, the Court will conduct a full substantive analysis of Defendant's Motion for Summary Judgment, rather than summarily granting relief based on Plaintiff's failure to comply with Local Rule 56 or her lack of evidence. As the movant, Defendant must still show "there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law." *Kitchen v. BASF*, 343 F. Supp. 3d 681, 687 (S.D. Tex. 2018).

[4] Plaintiff does suggest to the Court that RaceTrac has altered or destroyed documents related to her case (R. Doc. 40 at 4). However, these allegations are contradicted by the record or otherwise unsupported. Plaintiff first claims that "Exhibit 8 [of her deposition] is totally missing" (R. Doc. 40 at 4), when it is in fact part of the record (Exh. 8 of Pl.'s Depo., R. Doc. 32-3 at 313-15). She also points to a July 11, 2016 time sheet, suggesting it shows Plaintiff was "clocked in after [her July 6, 2016] termination" by someone at RaceTrac. (R. Doc. 40 at 4); (Exh. 16 of Pl.'s Depo., R. Doc. 32-3 at 353) (July 11, 2016 time sheet); (Pl.'s Depo., R. Doc. 32-3 at 216-20) (discussing the timesheet). Plaintiff testified that she obtained this time sheet by driving to a RaceTrac in Lafayette after her termination and using her former credentials to log into a RaceTrac computer. (Pl.'s Depo., R. Doc. 32-3 at 218-20). But whether this timesheet actually shows that Plaintiff was clocked in on July 11, 2016—and it is not clear that it does—it is irrelevant to whether Plaintiff was subjected to unlawful discrimination during her employment.

emails from RaceTrac Store #117" (R. Doc. 40 at 5); and "all documents" showing RaceTrac "location closure[s] since [her] termination" (R. Doc. 40 at 5). Because Plaintiff is proceeding pro se and her filings are liberally construed, the Court will interpret this as a Rule 56(d) request for a continuance, which it analyzes below.

### A.    Rule 56(d) Request for Continuance

"Rule 56(d) functions as a safe harbor that has been built into the rules so that summary judgment is not granted prematurely." *McCarty v. Target Corp*., 2015 WL 3561551, at *3 (E.D. Tex. June 8, 2015). It allows a court to defer ruling on a motion for summary judgment where the non-moving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). But "parties requesting Rule 56(d) relief may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013); *Serdarevic v. Advanced Medical Optics, Inc*., 532 F.3d 1352, 1363-64 (Fed. Cir. 2008) (nonmovant's mere hope of developing further evidence is inadequate reason to grant discovery under Rule 56(d)). Instead, the party seeking additional discovery must "explain what discovery she [does] have, why it [is] inadequate, and what she expect[s] to learn from further discovery" and "demonstrate to the court how that discovery would create a fact issue." *Bauer v. Albemarle Corp*., 169 F.3d 962, 968 (5th Cir. 1999). Plaintiff has failed to meet this burden.

Plaintiff does not explain what discovery she has conducted or describe the universe of documents in her possession, much less how the information she already has is inadequate. Even more problematic, she asks this Court to conduct the additional discovery on her own behalf by "subpoena[ing] . . . all evidence to prove [her] case." (R. Doc. 40 at 6). Although she references needing "all emails" from the store she managed, and records showing store closures following

her termination, she does not explain what facts these documents might contain or how she might use them to survive summary judgment.

Plaintiff had 6 months to conduct discovery in this case. (R. Doc. 16). During that time, she did not file any discovery-related motions or otherwise bring any discovery issues to the Court's attention. And when she initially failed to respond to Defendant's Motion for Summary Judgment, the Court sua sponte issued an Order giving her additional time to respond. It then granted another extension, at Plaintiff's request. In all, Plaintiff had 5 months to respond to Defendant's Motion for Summary Judgment. (R. Doc. 32) (Motion for Summary Judgment filed March 19, 2020); (R. Doc. 40) (Opposition filed August 18, 2020). She then impermissibly filed a Sur-Reply Memorandum without seeking leave of Court. Put simply, Plaintiff has had ample time to conduct discovery and has been given every opportunity to respond to Defendant's Motion for Summary Judgment. To the extent her Opposition can be construed as a request for relief under Rule 56(d), Plaintiff's request is **DENIED**.

## III.    LEGAL STANDARD

Summary judgment is appropriate if the moving party, "citing to particular parts of materials in the record," can show "there is no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). However, when the non-movant bears the burden of proof at trial, the party seeking summary judgment must only show that an essential element of the non-movant's claim cannot be established. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."). The court must construe all facts and

inferences in the light most favorable to the nonmovant and cannot weigh evidence or evaluate credibility. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398 (5th Cir. 2008).

## IV.    DISCUSSION

Plaintiff originally claimed she was terminated because of her actual disability and her race, in violation of the ADA and Title VII. She later amended her Complaint to allege that her termination also constituted retaliation. For the reasons given below, none of Plaintiff's claims can survive summary judgment.

### A.    Race Discrimination

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race," among other things. 42 U.S.C. § 2000e-2(a)(1). Based on the Charge of Discrimination attached to her Complaint (R. Doc. 1-1 at 19), Plaintiff has alleged she was terminated as store manager because Lenny Kutz wanted to replace her "with a white male, Gabe Last Name Unknown." (R. Doc. 1-1 at 19). However, Defendant suggests that Plaintiff abandoned her race discrimination claim during her deposition:

> Q      . . . With respect to the claim that you were terminated on -- on account of your race, why do you believe that race was a factor in the decision to terminate your employment?
>
> A      I kind of refuse to answer that question due to the fact is it's not on here. I don't have race on here. I actually took it off.
>
> Q      So you're withdrawing the claim of race discrimination?
>
> A      I did. I been did it.
>
> Q      All right. So is there -- okay. Just -- just to be clear, when you filed your charge of discrimination with the Equal Employment Opportunity Commission, you identified race as one of the bases of your claim?

A    I did.

Q    You are now withdrawing that claim?

A    The reason I withdraw it because I can't prove it. . . .

(Pl.'s Dep., R. Doc. 32-3 at 55-56).

Q    Well, I'm trying to figure out whether I need to ask you any more questions about your race discrimination claim. As we're sitting here today, are you intending to go forward with that claim, or are you withdrawing it?

A    I withdraw that one.

(Pl.'s Dep., R. Doc. 32-3 at 57). Based on this testimony, and the applicable law, Defendant suggests summary judgment is appropriate, as Plaintiff has withdrawn her race-discrimination claim. In response, Plaintiff does not refute Defendant's characterization of her clear testimony, nor does she make any effort to support her race discrimination claim or even argue against summary judgment on this issue.

The Fifth Circuit has held that a claim or defense may be abandoned (or waived) when a party fails to pursue it beyond their initial pleading. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[T]o the extent Black established a separate claim based on her reduced schooling, she failed to pursue it. She further failed to defend [the claim] in both responses to the defendant's motion to dismiss. Her failure to pursue this claim beyond her complaint constituted abandonment.").

Consistently, some courts have found abandonment based on deposition testimony. *See Moore v. United Postal Service*, 2004 WL 2339792, at *11 (N.D. Tex. Oct. 15, 2004) (In response to deposition questions about certain claims alleged in his complaint, plaintiff stated: "I'm not claiming that." The court therefore "conclude[d] that [Plaintiff] ha[d] clearly abandoned or [was] no longer asserting" those claims.); *Russell v. Degussa Engineered Carbons*, 2007 WL 433284, at

*12 (S.D. Tex. Feb. 6, 2007) (finding intentional inflection of emotional distress claim failed where, in his complaint, the plaintiff asserted that he had been mocked for his disability, but, during his deposition, "denied that the other employees talked about any of his mental impairments").

Meanwhile, others have deemed a claim abandoned where a plaintiff failed to defend it in response to a dispositive motion. *See Tickner v. City of Shreveport*, 2017 WL 629226, at *2 (W.D. La. Feb. 15, 2017) ("In his Motion for Summary Judgment, [defendant] addressed [plaintiff's] false arrest claim, excess force claim, and pendant state law claims. In opposing [the] motion, [plaintiff] defended only the excessive force and related state law claims. Thus, the Court deems [plaintiff's] Section 1983 false arrest claim and any pendant state law claim relating to false arrest abandoned."); *Ray v. Dufresne Spencer Grp., LLC*, 2019 WL 97029, at *13 (N.D. Miss. Jan. 3, 2019) ("Having closely reviewed Plaintiff's response to Defendants' motion, the Court agrees that Plaintiff does not defend her state law claims for assault and battery. . . . Because Plaintiff failed to pursue her claims against Defendants for assault and battery, they are no longer before the Court, as she has abandoned or waived them."); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (in response to summary judgment, plaintiff failed to address two theories pleaded in complaint or mention "a single fact that would trigger a genuine issue on these theories"); *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001) ("When confronted with the Daley Plaintiffs' motion for summary judgment, however, the City never re-asserted its limitations defense. . . . The vague language in the City's Original Answer coupled with the complete absence of the issue in all subsequent documents filed with the district court convinces us that the City abandoned its limitations defense.").

Here, Plaintiff not only testified that she was no longer claiming race discrimination, as she could not prove it, she likewise failed to defend her race discrimination claim in response to

Defendant's Motion for Summary Judgment. And so, Plaintiff has abandoned her claim for race discrimination—whether at her deposition or in response to the instant Motion—and summary judgment is appropriate. For this reason, the Court **recommends** that Defendant's Motion for Summary Judgment (R. Doc. 32) be **GRANTED** as to Plaintiff's claim for race discrimination under Title VII.

### B.    Retaliation

Relevant here,[5] both the ADA and Title VII preclude an employer from retaliating against an employee who engages in protected activity by opposing an employment practice made unlawful by either statute. *See* 42 U.S.C. § 2000e-3(a) (Title VII); 42 U.S.C. § 12203(a) (ADA). But under either statute, "plaintiffs must exhaust administrative remedies before pursuing claims in federal court, meaning a plaintiff must file a timely charge with the EEOC and receive a statutory notice of right to sue." *Stingley v. Watson Quality Ford*, -- F. App'x --, 2020 WL 7866436, at *4 (5th Cir. Dec. 3, 2020). A plaintiff's lawsuit should include claims that are "like or related" to those found in the EEOC charge or growing out of the EEOC's investigation. *McClain v. Lufkin Indus., Inc*., 519 F.3d 264, 273 (5th Cir. 2008).

Defendant argues that summary judgment is appropriate because Plaintiff both (1) failed to exhaust her administrative remedies, and (2) did not engage in protected activity. Because the Court finds there is no genuine issue of material fact that Plaintiff did not engage in protected

---

[5] Both Title VII and the ADA "outline[] two forms of protected activity: opposition and participation." *Stingley v. Watson Quality Ford*, 2020 WL 7866436, at *3 (5th Cir. Dec. 3, 2020*); see also Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn*., 555 U.S. 271, 274 (2009) ("antiretaliation provision has two clauses," the "opposition clause" and the "participation clause"); *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002) ("Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."). Here, Plaintiff alleges that she complained to a supervisor about certain workplace issues and was, in turn, fired from her job. In other words, Plaintiff is bringing an opposition claim.

activity, it **recommends** summary judgment be **granted** on Plaintiff's retaliation claim without considering Defendant's alternative argument (exhaustion of administrative remedies).

To establish a prima facie case of retaliation, "a plaintiff must first show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013).

To constitute protected activity, a plaintiff's internal complaint to her employer "—whether formal or informal—must still concern a discriminatory practice in order to form the basis of a retaliation claim under an anti-discrimination law." *Guillen v. Calhoun County*, 2012 WL 1802617, at *3 (S.D. Tex. May 16, 2012). Title VII and the ADA do "not protect opposition to all forms of unscrupulous conduct." *Brown v. United Parcel Service, Inc*., 406 F. App'x 837, 840 (5th Cir. 2010). Instead, they only protect opposition to discrimination based on "disability," 42 U.S.C. § 12203(a), or "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1). "Therefore, the relevant question is not whether a formal accusation of discrimination is made but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner." *Yount v. S & A Restaurant Corp*., 226 F.3d 641, at *3 (5th Cir. 2000); *see also Brown*, 406 F. App'x at 840 ("Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue.").

Here, Plaintiff claims that she received written warnings and was finally terminated in retaliation for complaining to Jonas Camacho on April 11, 2016, about: issues with her work

computer; product ordering glitches;[6] her bonus; and having to prepare the store for a leadership

forum. (Pl.'s Depo., R. Doc. 32-3 at 93, 94-95, 113-15, 145); (R. Doc. 40 at 5) ("RaceTrac

continued to . . . retaliate on me because of a conversation I had with Jonas Camacho on 4/11/16.").

Having reviewed the entire record,[7] the Court finds Plaintiff has failed to establish the first prong

of her prima facie case—that she engaged in protected activity.

At no point did Plaintiff indicate she was complaining of conduct that violated either Title

VII or the ADA, as opposed to typical job frustrations.[8] In Plaintiff's own words: "I had a

conversation with Jonas on 4/11/16 about my bonuses and my excessive product, and I talked

about the leadership forum." (Pl.'s Depo., R. Doc. 32-3 at 113).

Under the circumstances, it does not appear that Plaintiff believed the conduct violated

Title VII or the ADA at the time; and even if she did, the subject matter of Plaintiff's conversation

with Mr. Camacho was not sufficient to alert Defendant to her "reasonable belief" that "unlawful

discrimination" was at issue. *Brown*, 406 F. App'x at 840 ("Magic words are not required, but

protected opposition [to discrimination] must at least alert employer to the employee's reasonable

---

[6] Plaintiff testified that she believed she was receiving an excessive amount of product because Mr. Camacho had been out to get her since 2009, when Plaintiff allegedly saw Mr. Camacho stealing from a RaceTrac store. (Pl.'s Depo., R Doc. 32-3 at 116).

[7] The Court has reviewed the entire record in considering Defendant's Motion for Summary Judgment, including the documents attached to Plaintiff's Complaint (R. Doc. 1-1) and her entire deposition (R. Doc. 32-3).

[8] There is some record evidence that Plaintiff discussed taking some time-off with Mr. Camacho because she was overwhelmed, and that she may have eventually taken FMLA leave. (Pl.'s Depo., R. Doc. 32-3 at 65, 113-14). But even if Plaintiff had discussed time-off or FMLA leave with Mr. Camacho, numerous courts have found that taking or requesting FMLA or disability-related leave does not amount to protected activity. *Johnson v. JP Morgan Chase Bank, N.A.*, 293 F. Supp. 3d 600, 609 n.8 (W.D. La. 2018) ("Plaintiff intimates that he engaged in a protected activity by taking medical or disability leave. Taking such leave, however, does not amount to activity protected under the ADA because it in no way reflects opposition to any act or practice made unlawful under the ADA."); *Moss v. Harris Cty.*, 2016 WL 9049981, at *4 (S.D. Tex. Jan. 13, 2016) (finding that the plaintiff's request for medical leave to accommodate his disability was not a protected activity); *Murphy v. Gallery Model Homes, Inc.*, 2005 WL 5394658, at *14 (S.D. Tex. Feb. 16, 2005) (finding that taking FMLA leave is not a protected activity under the ADA because it "does not serve as opposition of any kind as contemplated by the ADA retaliation provision."); *Price v. City of Terrell*, 2001 WL 1012697, at *3 (N.D. Tex. Aug. 15, 2001) (plaintiff's decision to take FMLA leave did not constitute protected activity under the ADA).

belief that unlawful discrimination is at issue"); *see also Barber v. CSX Distribution Services*, 68 F.3d 694, 701-02 (3d Cir. 1995) ("Barber's letter to Human Resources complains about unfair treatment in general . . . . However, that letter does not explicitly or implicitly allege that age was the reason for the alleged unfairness. A general complaint of unfair treatment does not translate into a charge of illegal age discrimination."); *Garcia-Paz v. Swift Textiles, Inc.*, 873 F. Supp. 547, 560 (D. Kan. 1995) ("the wide range of protected activity clearly does not include those situations where the opposition relates not to unlawful employment practices but to a personal grievance"); *Alack v. Beau Rivage Resorts, Inc.*, 286 F.Supp.2d 771, 775 (S.D. Miss. 2003) ("Although express complaints to supervisors about perceived discriminatory practices constitute protected activity,[ ] the wide range of protected activity clearly does not include those situations where the opposition relates not to unlawful employment practices but to a personal grievance."); *Smith v. Hess Corp.*, 2017 WL 2215628, at *7 (S.D. Tex. May 18, 2017) ("Although [plaintiff] may have thought his failure to be promoted was related to race discrimination, his inquiry did not indicate to his supervisors that he was opposing discriminatory conduct."); *O'Daniel v. Indus. Serv. Sols.*, 2018 WL 265585, at *6 (M.D. La. Jan. 2, 2018) ("To constitute protected activity, a plaintiff's complaint—whether formal or informal—must still concern a discriminatory practice in order to form the basis of a retaliation claim under an anti-discrimination law.").

The Court therefore finds that Plaintiff cannot establish the first prong of her prima facia case—that she engaged in protected activity. And so, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED** as to Plaintiff's claim for retaliation under both Title VII and the ADA.

### C.     Disability Discrimination

The ADA makes it unlawful for an employer to discriminate against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Plaintiff alleges that she was terminated because of her disability (a disparate treatment claim). She may also allege disability-based harassment as well, although it is not entirely clear whether Plaintiff is also alleging harassment. (R. Docs. 1, 4) (do not explicitly claim harassment); (Pl.'s EEOC Charge, R. Doc. 1-1 at 19) (mentions harassment); (R. Doc. 40 at 5) (mentioning harassment). Nonetheless, because she is proceeding pro se, the Court will assume and consider Plaintiff's potential harassment claim before turning to her disparate treatment claim.

### i.     Harassment

To state a claim for disability-based harassment, Plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) she was subjected to unwelcomed harassment based on her disability; (3) the harassment was so severe or pervasive, it altered a term, condition, or privilege of employment; and (4) "the employer knew or should have known of the harassment and failed to take prompt, remedial action." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001) ("the disability-based harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment."). Plaintiff's harassment claim fails for several reasons.

In the EEOC Charge attached to her Complaint, Plaintiff claims that she was harassed by the benefits administrator at RaceTrac because "he keeps calling me after I have been discharged." (R. Doc. 1-1 at 19). When asked about this alleged harassment during her deposition, Plaintiff explained that after her termination, RaceTrac's benefits administrator returned several of Plaintiff's own phone calls, in addition to calling Plaintiff about her post-termination application

for short-term disability benefits. (Pl.'s Depo., R. Doc. 32-3 at 43-44). She also testified that Whitney Woodward, RaceTrac's Vice President of Human Resources, contributed to the alleged post-termination harassment. (Pl.'s Depo., R. Doc. 32-3 at 43-44). The record makes clear that Plaintiff not only initiated the communication, but repeatedly contacted Woodward in the weeks after her termination (Exh. 12 of Pl.'s Depo., R. Doc. 32-3 at 324-35)—something Plaintiff admitted to during her deposition (Pl.'s Depo., R. Doc. 32-3 at 44).

As for conduct occurring during her employment, Plaintiff testified that she believed people were stopping by (or sometimes calling) the store she managed to check up on her. (Pl.'s Depo., R. Doc. 32-3 at 41, 42, 45). This included not only RaceTrac employees, but also their friends. (Pl.'s Depo., R. Doc. 32-3 at 45). In particular, Plaintiff claimed that another manager, "Keta[,] had her friends stopping by that didn't even work at RaceTrac to see if I was there." (Pl.'s Depo., R. Doc. 32-3 at 45). Plaintiff also described a miscommunication about the documentation needed for a possible FMLA request as harassment. And finally, she claimed the ordering glitches and computer issues she experienced were done intentionally, causing her anxiety and paranoia and contributing to the harassment. (Pl.'s Depo., R. Doc. 32-3 at 103-04, 192, 200-02, 213 ("And with people harassing me, like I said, kept coming to the store, that what brought the paranoia"; "the harassment and the double truck ordering").

Plaintiff's harassment claim must fail for several reasons. First, much of the conduct occurred after Plaintiff's employment had ended, and it involved RaceTrac personnel either returning Plaintiff's own calls (or texts) or otherwise trying to assist Plaintiff in her application for short-term disability benefits. But even ignoring that much of the alleged conduct occurred after Plaintiff's employment, harassment is conduct so severe or pervasive it "create[s] an abusive working environment"—e.g., "[personal] attacks, teasing, physical or verbal threats, or

inappropriate language." *Clark v. Champion Nat'l Sec., Inc*., 952 F.3d 570, 586 (5th Cir. 2020). Monitoring an employee's attendance, counseling an employee about habitual tardiness, and following up on requests for either leave or post-termination benefits, "does not constitute harassment simply because they cause the employee distress." *Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir. 1998) ("Conversations between an employee and his superiors about his performance does not constitute harassment simply because they cause the employee distress."); *Hale v. ABF Freight Sys., Inc*., 503 F. App'x 323, 338 (6th Cir. 2012) (Having to respond to his supervisor's emails about his poor performance was "part of the ordinary tribulations of the workplace that do not amount to the sort of extreme conduct required to effect a change in the terms and conditions of employment"—i.e., harassment.); *Credeur v. Louisiana Through Office of Attorney Gen*., 860 F.3d 785, 796 (5th Cir. 2017) (employer's on-going discussions with employee about FMLA leave and fashioning a reasonable accommodation upon return to work were not harassment; "It is also significant that none of the DOJ's actions were physically threatening or humiliating or even offensive.").

Beyond that, Plaintiff has not offered any evidence tying the alleged conduct to any disability. *Clark v. Champion Nat'l Sec., Inc*., 952 F.3d 570, 586 (5th Cir. 2020) (The only evidence Clark provided to connect the alleged harassment to his diabetes is his own conclusory assertion . . . . That is not enough."). In fact, the only thing that even remotely relates to her alleged disability is Plaintiff's claim that RaceTrac followed up on her requests for leave and post-termination disability benefits. Put simply, "[t]here is no evidence that [Plaintiff] was ridiculed or insulted because of [any] [actual or perceived] medical condition." *Plautz v. Potter*, 156 F. App'x 812, 819 (6th Cir. 2005).

Ultimately, Plaintiff's "subjective physical and emotional reactions" to the ordinary frustrations of the "workplace do not establish that [her] work environment would have been perceived as hostile or abusive by a reasonable employee." *Kumar v. Shinseki*, 495 F. App'x 541, 543 (5th Cir. 2012). Therefore, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED** as to Plaintiff's harassment claim, which should be **dismissed with prejudice**.

### ii.    Disparate Treatment

To establish a prima facie violation of the ADA, a plaintiff must show that he or she was (1) disabled within the meaning of the ADA,[9] (2) qualified for the position, and (3) subjected to an adverse employment action because of his or her disability. *Hamilton v. Sw. Bell Tel. Co*., 136 F.3d 1047, 1050 (5th Cir. 1998); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (This initial burden "is not onerous."). If the plaintiff meets these requirements, a presumption of discrimination arises, which the defendant must then rebut by articulating a legitimate nondiscriminatory reason. *Bodenheimer v. PPG Indus. Inc*., 5 F.3d 955, 957 (5th Cir. 1993); *Turner v. Kansas City. S. Ry. Co*., 675 F.3d 887, 900 (5th Cir. 2012) (The burden shifts to the defendant to "produce admissible evidence that [its] decisions were based on legitimate, nondiscriminatory reasons."). If the defendant carries its burden, the plaintiff must than prove by

---

[9] "A plaintiff may be disabled in one or more of three ways—having an actual disability, having a record of a disability or being regarded as disabled." *Butler v. Louisiana Dep't of Pub. Safety & Corr*., 2013 WL 2407567, at *3 (M.D. La. May 29, 2013); *see also* 42 U.S.C. § 12102(1)(A)-(C). Although Plaintiff does not clearly state under which definition(s) of disability she is proceeding, the Court notes that the ADA was amended in 2008 to clarify the intended function of the regarded as prong—that it be used by individuals who are "not challenging a covered entity's failure to make reasonable accommodations." 29 C.F.R. § 1630.2(g)(3). Here, Plaintiff does not allege that Defendant failed to make a reasonable accommodation. And so, the 'regarded as' prong applies here.

After the 2008 amendments, an individual is regarded as disabled if he or she was (1) "subjected to an action prohibited under" the ADA, (2) because of "an actual or perceived" impairment regardless of whether the impairment is, or is perceived to be, substantially limiting. 42 U.S.C. § 12102(3)(A). The ADA's Regulations further explain that whether an individual is actually disabled "is not relevant to coverage under . . . the 'regarded as' prong." 29 C.F.R. § 1630.2(j)(2).

a "preponderance of the evidence that the legitimate reasons offered . . . were a pretext for discrimination." *Burdine*, 450 U.S. at 253.

For purposes of this Motion only,[10] the Court will assume—without deciding—that Plaintiff has made out a prima facie case of disability discrimination.[11] The burden then shifts to Defendant to produce evidence that it terminated Plaintiff for a legitimate nondiscriminatory reason, which Plaintiff must then rebut or call into doubt. As explained below, Defendant has met its burden, which Plaintiff cannot rebut.

### i.    Legitimate Nondiscriminatory Reason

Defendant has consistently stated that it terminated Plaintiff's employment because of her habitual tardiness (19 times over a 2-month period), "culminating in a [June 29, 2016] disciplinary meeting where Williams cursed at management and caused a serious workplace disruption

---

[10] To be clear, the Court does not find that Plaintiff has actually made out a prima facia case of disability discrimination. Instead, it merely assumes that one has been established for purposes of resolving Defendant's Motion for Summary Judgment.

[11] Because the Court finds Plaintiff cannot rebut Defendant's legitimate non-discriminatory reason, an analysis of the prima facia case is unnecessary. And again, while the Court makes no finding as to whether a prima facia case has been established, it does note there is record evidence that Plaintiff took (or at least inquired about taking) FMLA leave in 2016 and that she discussed having anxiety (or being overwhelmed) with RaceTrac management during her employment. (R. Doc. 1-1 at 25-31); (R. Doc. 32-3 at 57-59, 65). This type of evidence has been considered favorable to a plaintiff alleging that he or she was 'regarded as' disabled. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230-31 (5th Cir. 2015) (considering evidence of employer's knowledge of impairment, among other things, in denying summary Judgment where plaintiff alleged she was 'regarded as' disabled; court, however, found it particularly important that "when Freescale worked to compile 'documentation' justifying its decision to terminate Burton, it collected multiple reports from supervisors explicitly tying complaints about Burton's conduct to her asserted medical needs"); *Adair v. City of Muskogee*, 823 F.3d 1297, 1306 (10th Cir. 2016) (considering whether "the employer was aware of and therefore perceived the impairment" in determining whether plaintiff was regarded as disabled). However, this evidence alone is not enough to establish a prima facie case.

At the same time, Plaintiff also seems to be alleging that frustrations at work—in particular, ordering glitches and receiving excessive product—actually caused her anxiety, which in turn violated the ADA. (Pl.'s Depo., R. Doc. 32-3 at 60, 61, 70, 141, 173, 200-201); (R. Doc. 40 at 5) ("I didn't have a **disability until RaceTrac continued to harass and retaliate on me because of a conversation I had with Jonas Camacho on 4/11/16**."). In other words, Plaintiff is potentially claiming that Defendant caused her to become disabled in violation of the ADA, as opposed to claiming she was unlawfully terminated because of her disability. The Court limits its analysis to the latter, as it is the only conduct clearly prohibited by the ADA. *See* 42 U.S.C. § 12112(a) (An employer "shall discriminate . . . on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.").

witnessed and heard by other store employees and customers." (R. Doc. 32-1 at 10); (Cutrer Decl., R. Doc. 32-5 at 2); (Pl.'s Depo., R. Doc. 32-3 at 212-14); (Bassanini Decl., R. Doc. 32-6 at 2).

Defendant has produced ample evidence that after Ann Turner and Lenny Kutz presented Plaintiff with a fourth and Final Written Warning during the June 29, 2016 meeting, she became hysterical, angry, and defensive. (Pl.'s Depo., R. Doc. 32-3 at 87-88, 97); (Kutz Decl., R. Doc. 32-4 at 2-3); (Cutrer Decl., R. Doc. 32-5 at 2). Plaintiff yelled at both Turner and Kutz, used profanity, accused Kutz of trying to record her, threatened to call both a lawyer and a judge, and at one point left the storage room to make a "hysterical" phone call to Renzo Bassanini[12] (Executive Director of Field Human Resources). (Bassanini Decl., R. Doc. 32-6 at 6); (Pl.'s Depo., R. Doc. 32-3 at 97) (describing herself as hysterical); (Kutz Decl., R. Doc. 32-4 at 3) (according to Kutz, Plaintiff said: "Are you recording me? That's illegal without my knowledge! I have an attorney! I know lots of attorneys! I know a judge! I can call a f*cking judge!"); (Pl.'s Depo., R. Doc. 32-3 at 97-98) (Plaintiff testified that she was "kind of angry"; and so, she "could have" used profanity. "I don't know. I really don't recall . . . .").

Although the meeting took place in Store No. 117's storage room, Kutz stated that Plaintiff's screaming and language could be heard by those inside the store, including both customers and employees of RaceTrac. (Kutz Decl., R. Doc. 32-4 at 3) (when he walked out of the back storage room, immediately after Plaintiff stormed out of the meeting, Kutz "witnessed customers and other RaceTrac employees' shocked faces" and noted that Plaintiff was in her RaceTrac uniform as she was yelling).

---

[12] Plaintiff was hysterical and crying during the call with Bassanini. (Pl.'s Depo., R. Doc. 32-3 at 97); (Bassanini Decl., R. Doc. 32-6 at 2). When Ms. Bassanini tried to calm her, she hung up on him. (Bassanini Decl., R. Doc. 32-6 at 2); (Pl.'s Depo., R. Doc. 32-3 at 97).

Following the meeting, Mr. Kutz informed Tate Cutrer that Ms. Williams had "engaged in highly unprofessional conduct – which included yelling and profanity witnessed and/or heard by other RaceTrac employees and customers." (Cutrer Decl., R. Doc. 32-5 at 2); (Kutz Decl., R. Doc. 32-4 at 3). Mr. Kutz and Tate Cutrer then conferred with Renzo Bassanini (Director of Field Human Resources) and Jonas Camacho (Operations Supervisor) about Plaintiff's conduct and behavior during the meeting. (Cutrer Decl., R. Doc. 32-5 at 2); (Kutz Decl., R. Doc. 32-4 at 3); (Bassanini Decl., R. Doc. 32-6 at 2). They collectively decided to terminate Plaintiff's employment based on her highly unprofessional conduct during the June 29, 2016 meeting. (Cutrer Decl., R. Doc. 32-5 at 2); (Bassanini, Decl., R. Doc. 32-6 at 2). Defendant has therefore produced ample evidence that it terminated Plaintiff because of her unprofessional conduct during the June 29, 2016 meeting, as well as her habitual tardiness—i.e., a legitimate nondiscriminatory reason.

Courts have consistently found that "the ADA does not insulate an employee from adverse action taken by an employer because of misconduct in the workplace, even if [the] improper behavior is arguably attributable to an impairment." *Johnson v. Parkwood Behavioral Health System*, 2013 WL 1827585, at *4 (N.D. Miss. Apr. 30, 2013); *see also Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1052 (5th Cir. 1998) (Employee was terminated after engaging in an "abusive harangue, yelling 'You f___ing bitch!' . . . . [W]e are persuaded that the ADA does not insulate emotional or violent outbursts blamed on an impairment. An employee who is fired because of outbursts at work directed at fellow employees has no ADA claim."); *Roberson v. Iberia Comprehensive Cmty. Health Ctr., Inc.*, 2020 WL 1930467, at *8 (W.D. La. Apr. 21, 2020) (employee sent insubordinate text messages to superior, accusing him of having inappropriate relationships with co-workers, using curse words and threatening language; "attempts to excuse her conduct by arguing that it was caused by her mental illness are of no avail because the ADA

and the LEDL do not protect abusive, offensive conduct from termination."); *Jones v. Lubbock Cty. Hosp. Dist.*, 2020 WL 6787549, at *3 (5th Cir. Nov. 18, 2020) ("Applying McDonnell Douglas, the district court correctly held that UMC had shown a legitimate basis for the firing, which Jones failed to rebut. UMC documented its reason for Jones's termination by producing its employee conduct policy forbidding gossip, its record of the termination with stated reasons, and its record of Jones's previous disciplinary history under that policy.").

### ii.    Pretext

Because Defendant has met its burden of production and established a legitimate, nondiscriminatory reason for the adverse employment action, summary judgment is warranted unless Plaintiff can point to evidence creating a genuine issue of material fact that Defendant's proffered reason is pretext for discrimination. Plaintiff cannot.

In her Opposition to summary judgment, Plaintiff now denies that she ever used profanity during the June 29, 2016 meeting and therefore claims that Defendant's alleged reason for her termination is "fraudulent." (R. Doc. 40 at 6). This argument not only fails to address the remainder of Defendant's reasons—i.e., screaming in front of customers, insubordination, and habitual tardiness—Plaintiff has neither produced nor cited to any record evidence in support of this argument. Nonetheless, the Court has reviewed the documents found in the record, including Plaintiff's entire deposition, none of which establish a genuine issue of material fact to survive summary Judgment.

During her deposition, Plaintiff did not deny that she was late on the dates listed in the 4 written warnings issued to her between April and June of 2016. (Pl.'s Depo., R. Doc. 32-3 at 106, 120-21, 123-24, 138-39, 308-09, 311-12, 312-15, 321-23). As for her behavior during the June 29, 2016 meeting, Plaintiff acknowledges that she was angry and hysterical, but she took issue with

Defendant's claim that she used profanity. Initially, Plaintiff testified that she did not use profanity during the June 29th meeting:

> They told me that I cursed around a guest when I never cursed around a guest. That's why they told me I was terminated. . . . He said that I said I cursed, I said I know a -- a effing lawyer. . . . I did say I do know attorneys and I do know judges. I did say that.

(Pl.'s Depo., R. Doc. 32-3 at 87-88). She then walked that statement back, ultimately explaining:

> I was kind of angry. So I mean, it could have -- I could have said it. I don't know. But I really don't recall saying it.

(Pl.'s Depo., R. Doc. 32-3 at 88). But a plaintiff "cannot survive summary judgment merely because she disagrees with the [employer's] characterization of her [conduct]; rather, the issue is whether the [employer's] perception of [the plaintiff's] [conduct], accurate or not, was the real reason for her termination." *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001). Plaintiff has not pointed to any evidence that calls into question Defendant's stated reason for her termination—her tardiness and behavior during the June 29, 2016 meeting.

Under the circumstances, Plaintiff's testimony—that she denies or is at least unsure of whether she used profanity—is insufficient to show pretext or otherwise create a genuine issue of material fact to survive summary judgment. *See Jones v. Lubbock Cty. Hosp. Dist.*, 2020 WL 6787549, at *3 (5th Cir. Nov. 18, 2020) ("Jones's only evidence of pretext—his denial that his conduct [violated defendant's policy]—falls short of the substantial evidence required to prove pretext. Summary judgment on Jones's discriminatory-firing claim was therefore proper."); *Dana Corp. v. Am. Standard, Inc.*, 866 F. Supp. 1481, 1504 (N.D. Ind. 1994) (Plaintiffs' reliance on Mr. Lindsay's testimony was insufficient to create a genuine issue of material fact precluding summary judgment where "Mr. Lindsay could not testify for certain whether the aerosol cans were taken to the Site."); *Little v. Brown & Williamson Tobacco Corp.*, 2000 WL 33957172, at *8 (D.S.C. May

8, 2000) ("The above-quoted excerpt makes clear only that Mr. Little could not remember where he gained knowledge of the ratings, and such speculation does not create a genuine issue of material fact regarding whether Mr. Little witnessed or relied upon statements by Reynolds."); *Maxtech Consumer Prod., Ltd. v. Robert Bosch Tool Corp*., 255 F. Supp. 3d 833, 849 (N.D. Ill. 2017) ("And Maxtech's reliance on Osberg's testimony that he was the inventor and 'could not remember when he allegedly conceived the full cone threaded tip,' does not create an issue for the jury. The June 18 product sheet is unrebutted evidence that the conception of the idea within Bosch. . . took place before the June 20 meeting, and Osberg's testimony that he cannot recall the date of his conception is not evidence to the contrary."); *Tinder v. Pinkerton Sec*., 305 F.3d 728, 735-36 (7th Cir. 2002) (The non-movant plaintiff's "only evidence that she never received notice of the program was her own affidavit in which she avers that she 'does not recall seeing or reviewing the Arbitration Program brochure that Defendant alleges was included with her payroll check in October, 1997,' and this does not raise a genuine issue of material fact." . . . [T]he uncontroverted affidavits of [2 other employees] indicate that the brochure was definitely sent and presumably received with her paycheck.").

The Court therefore finds Plaintiff cannot show a genuine issue of material fact exists as to whether Defendant's proffered reason for her termination is pretextual. Because Plaintiff is unable to rebut Defendant's legitimate nondiscriminatory reason, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED** and that Plaintiff's claims for disability discrimination be **DISMISSED with prejudice**.

## V.    CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment (R. Doc. 32) be **GRANTED** and that Plaintiff's cause of action be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on February 3, 2021.


_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**